# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-00411-PAB-NYW

ARNOLD A. CARY,

    Plaintiff,

v.

JOHN W. HICKENLOOPER, Governor,
RICK RAEMISCH, Executive Director,
JAMES FALK, Warden SCF,
MUARICE FAUVEL, D.O. Physician's Assistant,
KERI MCKAY, P. A., SCF Physician's Assistant,
KELSEY PRUSHA, also known as Kelsey Dellinger, R.N. S.C.F,
KEVIN VORWALD, Captain, SCF,
UNKNOWN FIRST NAME PAGE, Lieutenant, SCF
UNKNOWN FIRST NAME MOON, Lieutenant, SCF,
UNKNOWN FIRST NAME LUECK, Case Manager, SCF, and
UNKNOWN FIRST NAME HERREA, Case Manager, SCF

    Defendants.

___

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
___

Magistrate Judge Nina Y. Wang

    This action comes before the court on State Defendants'[1] Motion to Dismiss, filed on February 6, 2015 [#35] (the "State Defendants' Motion to Dismiss"). Also before the court is

---

[1] The court refers to the following defendants in this action as the "State Defendants": Governor John W. Hickenlooper ("Governor Hickenlooper"), CDOC Executive Director Rick Raemisch ("Executive Director Raemisch"), SCF Warden James Falk ("Warden Falk"), Dr. Maurice Fauvel (according to the State Defendants, incorrectly identified as "Muarice Fauvel" in Plaintiff's Amended Complaint) ("Dr. Flauvel"), Nurse Kelsey Dillinger (according to the State Defendants, incorrectly identified as "Kelsey Prusha" and "Kelsey Dellinger" in Plaintiff's Amended Complaint) ("Nurse Dillinger"), Kevin Vorwald ("Defendant Vorwald" or "Captain Vorwald"), Virginia Page ("Defendant Page" or "Lieutenant Page"), and Joseph Herrera

Defendant Keri McKay's Motion to Dismiss, filed on February 10, 2015 ("Ms. McKay's Motion to Dismiss") (with the State Defendants' Motion to Dismiss, collectively the "Motions to Dismiss"). Pursuant to the Order Referring Case and the Memorandum dated March 23, 2015 [#53, #54], the Motions to Dismiss are before this Magistrate Judge. The court has reviewed the operative Amended Complaint [#11] in this matter, the Motions to Dismiss and any replies in support thereof, Plaintiff's Supplemental Pleading [#36], Plaintiff's Opposition to Defense Motion to Dismiss [#47], Opposition to Defense Claims for Qualified Immunity [#65], exhibits thereto, the case files for Plaintiff's actions, and the applicable case law. Finding that oral argument would not assist in their disposition, the court hereby respectfully RECOMMENDS the Motions to Dismiss be GRANTED for the following reasons.

**BACKGROUND AND RELEVANT PROCEDURAL HISTORY**

In 2012, Plaintiff Arnold A. Cary ("Plaintiff" or "Mr. Cary") filed a case challenging the conditions of his confinement at the Colorado Territorial Correctional Facility. *See Cary v. Hickenlooper*, Civil Action No. 12-cv-2072-RM-KLM (D. Colo.). In this action, Plaintiff brings similar allegations related to his "conditions of confinement of the plaintiff's incarceration at the Sterling Correctional Facility [hereinafter, also the "SCF"]." [#1 at 5]. By Order dated June 26, 2014, the court directed Plaintiff to file an Amended Complaint, limited to allegations that were not previously asserted in Civil Action No. 12-cv-2072-RM-KLM. [#6]. On July 30, 2014, Mr. Cary filed his Amended Complaint, asserting two violations of his Eighth Amendment right against cruel and unusual punishment, and a third claim alleging violation of access to courts. [#11]. By order dated November 20, 2014, Plaintiff's third claim alleging violation of access to courts was dismissed as frivolous. [#18 at 5].

---

(according to the State Defendants, incorrectly identified as "Herrea" in the Amended Complaint) ("Defendant Herrera" or "Lieutenant Herrera").

According to the Amended Complaint, Plaintiff has been exposed to a "wide variety of waterborne toxicological hazards" at the SCF. [*Id.* at 8, ¶ 1].[2] The following is a recitation of allegations from the Amended Complaint relevant to the disposition of the instant Motions to Dismiss that, where well-pled, the court takes as true in determining whether Plaintiff has stated any viable claim.

Plaintiff alleges that, in February of 2008, a notice was issued by then Governor Bill Ritter concerning contamination of the city of Sterling's water supply (the "2008 Notice"). [*Id.* at ¶ 2]. The notice is said to have been prompted by the Colorado Department of Health and Environment's findings of elevated levels of uranium and trihalomethane in Sterling's drinking water at that time. [*Id.* at 8 ¶ 3]. Plaintiff further alleges that, several years later, on July 25, 2013, Defendant Governor Hickenlooper issued an "Amendment"[3] to the 2008 Notice. [*Id.* at 9, ¶ 6]. On August 22, 2013, according to the Amended Complaint, a memorandum was distributed to Plaintiff and other prisoners at the SCF "informing them that the water the inmates were drinking, preparing food with, and bathe in, [was] contaminated with uranium." [*Id.* at 9, ¶ 7-8]. Plaintiff asserts that this memorandum was signed by Rick Raemisch, was "acknowledge[d] by the Warden James Falk," was approved by Governor Hickenlooper himself. [*Id.*].

Plaintiff also alleges that the alternative source of water was drawn from the Canon City Water Treatment district. [#11 at 10, ¶ 10]. According to the Amended Complaint, there were two isolated reports in 2012 and 2013 of incidents implicating potential contamination of the

---

[2] The paragraphs in Plaintiff's Amended Complaint are consecutively numbered within claims but not between claims, and Plaintiff also did not internally number every page of the document. For the sake of simplicity, the court cites to the page number as assigned by the court's CM/ECF system as appropriate in this Recommendation.

[3] The contents of this "Amendment" are not described in the Amended Complaint.

Canon City water supply. [*Id.* 10-11, at ¶¶ 10-16]. Plaintiff alleges that, during the summer and fall of 2013, several prison employees (Lt. Page, Lt. Moon, Case Manager Lueck, and Case Manager Herrera) represented to him that they believed that the drinking water originating in Sterling and/or Canon City did not pose a substantial health risk to Plaintiff. [*Id.* at 11-12, ¶¶ 17-20].

In his Second Claim, styled as "Irreparable Injury/8th Amendment," Plaintiff asserts that he has "been denied appropriate medical care for health problems that have developed as a result of his exposure to waterborne toxicological hazards." [*Id.* at 14, ¶ 1]. Plaintiff alleges that Defendants Maurice Fauvel, Keri McKay, and Kelsey Prusha initially declined to order a MRI evaluation of Plaintiff, notwithstanding the recommendation of other physicians. [*Id.* at ¶ 2]. Plaintiff admits that a MRI was subsequently provided. [*Id.* at ¶ 3]. Plaintiff also alleges that, when he asked Ms. McKay about the potential hazards posed by uranium in SCF drinking water in the fall of 2013, Ms. McKay told Plaintiff "it is not a problem" and that he should aim to stay well-hydrated. [*Id.* At 15, ¶ 5]. According to the Amended Complaint, the medical providers referenced above have prescribed various medications and treatments, but have failed to "diagnose [] the real problem"—apparently in Plaintiff's view, a medical condition or constellation of conditions related to his purported waterborne toxic exposures at the SCF. [*Id.* at 15-16, ¶¶ 6-9].

## ANALYSIS

### I.   Standard of Review

The State Defendants move to dismiss the Amended Complaint pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. [#35]. Defendant McKay challenges the Amended Complaint only under Rule 12(b)(6). [#40].

The State Defendants frame their jurisdictional attack as a facial attack. A facial attack on subject matter jurisdiction questions the sufficiency of a complaint. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). In reviewing such a motion, the court accepts the allegations of the complaint as true. *Id.*

Similarly, under Rule 12(b)(6), the court not only accepts as true all well-pleaded facts, but also draws all reasonable inferences in favor of plaintiff to decide whether they plausibly entitle plaintiff to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009); *accord. Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (recognizing that a plaintiff must frame a complaint with enough factual matter, when taken as true, to plausibly suggest that he or she is entitled to relief) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S.Ct. 1955 (2007)). A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A claim may be dismissed because it asserts a legal theory that is not cognizable as a matter of law, or because it fails to state sufficient facts to establish a legally recognized claim. *Golan v. Ashcroft*, 310 F.Supp.2d 1215, 1217 (D. Colo. 2004).

While the court's analysis is typically focused on the allegations as set forth within the four corners of the complaint, the court may consider documents referred to in the complaint that are central to the claims without converting the motion to dismiss into one for summary judgment. *Grynberg v. Koch Gateway Pipline Co.*, 390 F.3d 1276, 1279 n.1 (10th Cir. 2004). The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## II.     Official Capacity Claims:  Retroactive Monetary Damages

The State Defendants first argue that "[i]t is unclear from the Complaint whether Plaintiff seeks monetary damages from the State Defendants in their official capacity." [#35 at 5]. The Amended Complaint demands an award of compensatory and punitive damages from "each individual defendant." [#11 at 21-23]. To the extent that Mr. Cary seeks monetary damages from the individuals in their official capacities, the State Defendants argue that the court lacks subject matter over such a claim based on the Eleventh Amendment. [#35 at 5-6]. In his Opposition, Mr. Cary does not address whether he seeks monetary damages against the State Defendants.

"The Eleventh Amendment bars suits in federal courts against unconsenting states by the state's own citizens and by citizens of another state."  *Walker v. Hickenlooper*, No. 14–cv–01062–BNB, 2014 WL 5072916, at *5 (D. Colo. Oct. 09, 2014) ("*Walker*") (citing *Port Auth. Trans–Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990)). This immunity "constitutes a bar to the exercise of federal subject matter jurisdiction," *Fent v. Okla. Water Res. Bd.*, 235 F.3d 553, 559 (10th Cir. 2000) (emphasis omitted), and applies to suits arising under 42 U.S.C. § 1983. *Quern v. Jordan*, 440 U.S. 332, 345 (1979).  An exception to this jurisdictional bar is that plaintiffs may seek prospective injunctive relief, despite the fact that retroactive monetary relief is barred. *Walker*, 2014 WL 5072916 at *5 (citing *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 104 S.Ct. 900 (1984)). The State Defendants are all employed by the State of Colorado, and accordingly, the Eleventh Amendment jurisdictionally bars suit against the State Defendants in their official capacities for retroactive monetary relief.   To the extent Amended Complaint can be read to raise any such claims, I respectfully RECOMMEND that they be DISMISSED WITHOUT PREJUDICE for lack of jurisdiction.

### III.     Individual Capacity Claims:  Cruel and Unusual Punishment Claims

Under the Eighth Amendment, prison officials are charged with maintaining "humane conditions of confinement."  *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).  A prisoner seeking to establish a violation of this requirement must as an initial matter demonstrate that the conditions of confinement created "a substantial risk of serious harm."  *Id.* at 834.  Second, the prisoner must also show that officials acted with "deliberate indifference."  *Id.*  "Deliberate indifference" requires actual awareness of the risk at issue by the relevant officials, and a failure to take "reasonable measures" to "abate" the risk.  *Id.* at 847.  Accordingly, to state a viable conditions-of-confinement claim, a Plaintiff must allege "sufficient facts" with respect to the "knowledge or intentions" of the "individuals name[d] as defendants" to show a "culpable mental state on the part" of at least one official responsible for the conditions complained of.  *Smith v. Romer*, 107 F.3d 21, 1997 WL 57093, at *2 (10th Cir. Feb. 11, 1997) (unpublished table opinion) (affirming summary judgment as to conditions-of-confinement claim where plaintiff failed to plead culpable state of mind, and record indicated that prison officials sought to remedy condition complained of).

#### A.     Claim I:  "Cruel and Unusual Punishment/8th Amendment Violation"

In Claim I, Plaintiff alleges that he "has been, and continues to be, exposed to a wide variety of waterborne toxicological hazards that have already negatively affected his health and rendered him permanently disabled." [#11 at 4-13].  He alleges that Defendants Governor Hickenlooper, Executive Director Raemisch, Warden Falk, Captain Vorwald, Lieutenant Page, and Lieutenant Page were deliberately indifferent and failed to protect him from the effects of the hazardous water.  [*Id.*]  The State Defendants argue Mr. Cary has failed to allege sufficient

facts, even if take as true, a violation of Plaintiff's Eighth Amendment constitutional rights. [#35 at 6-14].

### 1. Personal Involvement

Generally, to hold a government official individually liable under § 1983, the plaintiff must establish that the defendant had personal involvement in the alleged constitutional violation.[4] *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997). Supervisory status alone does not create liability; rather, there must be an affirmative link between the constitutional deprivation and the defendant's personal participation. *See Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (*citing Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997)). The State Defendants argue that Plaintiff fails to plead requisite facts of personal participation by any of the State Defendants to survive this instant Motion to Dismiss. [#35 at 7-12].

In order to determine whether Mr. Cary sufficiently pled personal participation, the court turns to consider the allegations as set forth in the Amended Complaint. With respect to Defendants Governor Hickenlooper and Executive Director Raemisch, I agree that there is no allegation in the Amended Complaint to suggest that Governor Hickenlooper or Executive Director Raemisch personally participated in any manner. [#11 at 9 ¶ 6]. While Plaintiff insists that the written notices from the Governor and Executive Director Raemisch "warn[ed] inmates and staff of the uranium contamination in Sterlings [sic] water," [#47 at 3-4], the notices do not

---

[4] Some panels of the Tenth Circuit have observed in cases involving challenges to conditions of confinement, the consideration of "personal participation" is supplanted by the deliberate indifference standard from *Farmer v. Brennan*, 511 U.S. 825 (1994). *Smith v. Romer*, 107 F.3d 21, *3 n.4 (Table) (1997) (unpublished disposition). Other panels have continued to analyze personal participation in addition to considering deliberate indifference. *See Martinez v. Beggs*, 563 F.3d 1082, 1092 (10th Cir. 2009); *Duffield v. Jackson*, 545 F.3d 1234, 1239 (10th Cir. 2008); *McDaniels v. McKinna*, 96 Fed. Appx. 757, 759 (10th Cir. 2004). This court considers personal participation separately from the subjective prong of the deliberate indifference analysis, as a distinct ground for dismissal.

represent that they originated from the Governor's office, nor do they establish that Governor Hickenlooper reviewed or approved them at all.[5] [#35-1, #35-2]. Similarly, the notice from the CDOC does not mention Executive Director Raemisch, and Mr. Cary's allegations involving Executive Director Raemisch appear to be premised solely on his supervisory capacity as the head of the CDOC. *See Gallagher*, 587 F.3d at 1069 (*citing Duffield v. Jackson*, 545 F.3d 1234, 1239 (10th Cir. 2008) (holding that supervisory status alone does not create § 1983 liability).

The Amended Complaint is more descriptive regarding the remaining State Defendants. Plaintiff's alleges with respect to Captain Vorwald's participation is that he delivered the "Amendment" from Governor Hickenlooper, and Lieutenant Herrera delivered a response to a grievance to Plaintiff, and responded to Plaintiff's question as to whether Lieutenant Herrera drank the water with a "no." [#11 at 9, ¶ 7; 12, ¶ 20]. Plaintiff also alleges Lieutenant Page refused to accept a specimen of "toxic water," and told him that "[t]here is nothing wrong with the water." [*Id.* at 11, ¶ 17]. These allegations simply do not amount to personal participation under the law. *See Gallagher*, 587 F.3d 1063, 1069 (10th Cir. 2009) (denial of a grievance is insufficient to establish personal participation in an alleged constitutional violation).

But contrary to the State Defendants' arguments that Warden Falk is included in this lawsuit "because of his role as the administrative head of the SCF," the notice to inmates at SCF regarding the allegedly contaminated water originates specifically from Warden Falk and appears to bear his initials. [#35-2]. In addition, Plaintiff alleges that Warden Falk knew of the recommendation to provide water to the inmates from an uncontaminated source [#11 at 10, ¶ 13], but knowingly provided him with toxic life threatening water nonetheless. [*Id.* at 10-11, ¶

---

[5] The notices are attached to the State Defendants' Motion to Dismiss as exhibits [#35-1, #35-2]. The court may consider them without converting the instant motion to one for summary judgment because they are central to Plaintiff's allegations. *See Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002). Nor does Plaintiff dispute their authenticity. [#47].

14]. Plaintiff further alleges that Warden Falk actively attempted to deceive him into believing that the alternative drinking water offered to the inmates, including Plaintiff, was safe. [*Id.*] At this stage of the proceeding, the court finds that these allegations are sufficiently stated to survive dismissal on the ground of personal participation as to Warden Falk.

### 2. Deliberate Indifference: Objective Component

The court next considers whether Plaintiff has satisfied the objective component of the test for deliberate indifference. To start, there is persuasive authority within and outside this district indicating that Plaintiff's specific allegations regarding the allegedly contaminated water fail to state a substantial risk of serious harm. *See, e.g.*, *Cary v. Tessier*, No. 12–cv–02072–RM–KLM, 2014 WL 5298170, at *1, *11 (D. Colo. Feb. 4 2014) (holding as to Plaintiff's claims arising from allegedly contaminated water, "[b]ased on the Court's review of the Second Amended Complaint, the Court finds that Plaintiff has failed to make sufficient allegations to establish that he has been deprived of life's most basic needs. Plaintiff states that he receives meals and water and is housed in a cell. Plaintiff's primary complaint seems to be that the quality of these necessities is not sufficient. The Court finds that Plaintiff's allegations fail to satisfy the objective component of the deliberate indifference test.")[6]; *see also Carroll v. DeTella*, 255 F.3d 470, 472 (7th Cir. 2001) (holding that Eighth Amendment does not impose requirement "to provide a maximally safe environment, one completely free from pollution or safety hazards" as many "Americans live under conditions of exposure to various contaminants," and the "Eighth Amendment does not require prisons to provide prisoners with more salubrious air, healthier food, or cleaner water than are enjoyed by substantial numbers of free Americans") (citations omitted); *Kimbro v. Chen*, No. 1:11–cv–00957–GBC (PC), 2012 WL 6571036 at *6

---

[6] The Magistrate Judge's Recommendation was adopted in *Cary v. Tessier*, No. 12–cv–02072–RM–KJM, 2014 WL 5293558 (D. Colo. Oct. 16, 2014).

(E.D. Cal. Dec. 17, 2012) (recognizing that though toxic exposures can in some instances support Section 1983 liability, "Plaintiff's speculative and conclusory allegations fail to state a claim that the elevated levels of arsenic in the water is sufficiently serious as to constitute a risk of harm to Plaintiff's health. Plaintiff has alleged that he has various adverse health conditions attributable to the exposure, but provided no facts that would enable the Court to conclude that this is anything more than unqualified speculation by an individual and not based on medical or other training or science.").

The same factors are present in this instant case. The very notices relied upon by Plaintiff to establish his claims indicate that SCF "obtains its drinking water from the city of Sterling," and indicates that "[t]he Colorado Department of Public Health and Environment (CDHPE) believes that uranium is not considered to be a contaminant associated with health effects from short-term exposure at the recently observed levels." [#35-1 at 1]. None of the allegations contained in the Amended Complaint suggest that Plaintiff faced any contaminants different than those faced by non-incarcerated citizens of Sterling. [#11]. And Mr. Cary's allegations with respect to the "Alternative Drinking Water" are unsupported by any facts to establish that the water was provided from Four Mile Correctional Facility, or was in any way contaminated, or if contaminated, was contaminated at levels that would cause health issues. [#11 at 10, ¶¶ 10-13]. Even taken in the light most favorable to him, Mr. Cary has simply failed to allege sufficient facts to meet his burden of pleading a substantial risk of harm.

### 3. Deliberate Indifference: Subjective Component

Even assuming *arguendo* that the risk of increased uranium exposure complained of is a "substantial risk of serious harm" cognizable under the Eighth Amendment, Plaintiff is also required to plead facts sufficient for a factfinder to conclude that the State Defendants acted with

deliberate indifference to a known risk. *Farmer*, 511 U.S. at 847. Plaintiff's allegations as to the State Defendants' alleged mental state are too conclusory to allow for a plausible inference that any particular named Defendant was aware of any such risk, yet failed to discharge his or her responsibility to seek abatement of the risk. For example, in attempting to allege that Warden Falk knew the alternative Canon City drinking water was unsafe, Plaintiff avers only that "Warden Falk knowingly provided plaintiff with toxic life threatening water from Canon City" in an effort to "deceive" Plaintiff into believing that Canon City water was safe to drink. [#11 at ¶ 14]. Similarly, Plaintiff avers that "[a]ll above named Parties had personal knowledge of the contaminated water at SCF" because he contends that SCF employees were provided with quarterly updates as to contamination levels from 2008 onwards. [*Id.* at ¶ 16].

While these allegations, taken as true, might support a finding that Warden Falk personally participated in an alleged violation, they do not, under the pleadings standards required by *Iqbal* and *Twombly*, suggest that Warden Falk or any of the other State Defendants understood that there was a substantial known risk of harm and that they acted with deliberate indifference to that risk. Plaintiff may not avoid dismissal by means of pleading mere labels and conclusions (*e.g.* by pleading general "knowledge" of hazards), or by asking the court for the benefit of implausible inferences (*e.g.* that reports by the Denver Post noting deaths of 19 horses means that toxic water was supplied to SCF inmates). *See, e.g.*, *Walker v. Hickenlooper*, No. 14–cv–01062–BNB, 2014 WL 5072916, at *8 (D. Colo. Oct. 09, 2014) (finding that plaintiff failed to allege requisite personal participation and/or knowledge on the part of any named defendant).

Accordingly, this court concludes that Plaintiff has failed to state a viable claim, and respectfully RECOMMENDS that Count I be DISMISSED WITHOUT PREJUDICE as to all State Defendants.

### B.      Claim II: "Irreparable Injury/8th Amendment Violation"

In Claim II, Plaintiff alleges that he "has been denied appropriate medical care for health problems that have developed as a result of his exposure to waterborne toxicological hazards." [#11 at 14, ¶ 1]. Mr. Cary alleges that Ms. McKay examined him numerous times, and advised him to drink plenty of water to stay hydrated. [#11 at 15, ¶ 5]. He further alleges that Dr. Flauvel acts as the "primary physician supervisor at SCF's infirmary," who repeatedly denied requests for examination until a recent July 16, 2014 one. [*Id.* at ¶ 4]. All Defendants urge the court to dismiss Claim II for multiple reasons, including the lack of allegations supporting (1) personal involvement by Ms. Dillinger; or (2) a sufficiently serious medical need.

#### 1.      Personal Involvement

As set forth above, in order for a defendant to be individually liable for a constitutional violation, she must have personal involvement in the alleged violation. *See supra*, Section III.A.1. The State Defendants argue that Defendant Dillinger should be dismissed because Plaintiff fails to allege any facts in the Amended Complaint specific to her. [#35 at 15]. A review of the Amended Complaint demonstrates that the State Defendants are correct [#11], and in his Opposition, Mr. Cary does not describe any actions by Ms. Dillinger. [#47]. Therefore, this court finds that Plaintiff fails to state a cognizable claim against Defendant Dillinger.

#### 2.      Deliberate Indifference: Objective Component

The State Defendants also argue that the claims against Dr. Flauvel should be dismissed because Plaintiff fails to allege facts that amount to a serious medical need. [#35 at 14-16].

13

Incorporating their argument with respect to Claim I, the State Defendants insist that "Plaintiff has not alleged facts establishing a substantial risk of serious harm to his health." [*Id.* at 16]. This court respectfully disagrees.

A plaintiff seeking to state a constitutional claim under the Eighth Amendment based on purportedly inadequate medical care must allege facts constituting an extreme deprivation. "Because discomfort is part of the penalty that criminal offenders pay for their offenses against society, . . . only those deprivations denying the minimal civilized measures of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citation and quotation omitted). A medical need is considered sufficiently serious to require attention only "if the condition has been diagnosed by a physician as mandating treatment . . . or is so obvious that even a lay person would easily recommend the necessity for a doctor's attention." *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001) (citation and quotation omitted). Under the law of this circuit, "(1) a medical professional failing to treat a serious medical condition properly; and (2) a prison official preventing an inmate from receiving medical treatment or denying access to medical personnel capable of evaluating the inmate's condition" may "constitute deliberate indifference in a prison medical case." *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006) (citation omitted). A mere difference of opinion as to the proper course of treatment warranted for an inmate general cannot support a claim for cruel and unusual punishment. *Olsen v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993).

Mr. Cary alleges that he had extreme pain in his right upper abdominal quadrant; that he experienced bloating; that he has skin discoloration due to spider angiomas; palmar erythema and Dupuytren contractures; swollen ankles and legs; and chronic liver disease. [#11 at 16-17, ¶ 9]. In Opposition, Plaintiff also asserts that non-defendant Charles Kudlauskas, P.A., found a

mass that was causing excruciating pain. [#46 at 2-3]. The State Defendants do not challenge whether Mr. Cary suffers from these ailments (and indeed, appear to concede that such conditions appear in Plaintiff's medical records), but rather what caused them. [#35 at 16, 18]. At this stage of this case, and because the court interprets the filings of a *pro se* litigant liberally, the court finds that Mr. Cary has stated sufficient facts to survive dismissal on the objective prong of the test for deliberate indifference. Regardless of the cause of Plaintiff's alleged injuries, to the extent that Mr. Cary has chronic liver disease, such a disease would, in this court's opinion, amount to a serious medical condition. *See Thomas v. Bruce*, 125 Fed. Appx. 964, 966-67 (10th Cir. 2005) (unpublished) (finding that an inmate's diagnosis of abnormal liver-enzyme levels was sufficient to satisfy the objective prong of the analysis); *Horton v. Ward*, 123 Fed. Appx. 368, 372 (10th Cir. 2005) (unpublished). Therefore, the court will now turn to whether Plaintiff's claim for a violation of the Eighth Amendment also satisfies the second, subjective prong of the deliberate indifference analysis.

### 3. Subjective Component

Plaintiff asserts that he has "been denied appropriate medical care for health problems that have developed as a result of his exposure to waterborne toxicological hazards." [#11 at 14, ¶ 1]. Plaintiff alleges that Defendants Fauvel, McKay, and Dillinger (Pursha) initially declined to order a MRI evaluation of Plaintiff, notwithstanding the recommendation of other physicians. [*Id.* at ¶ 2]. Plaintiff admits that a MRI was subsequently provided. [*Id.* at ¶ 3]. Plaintiff also alleges that, when he asked Ms. McKay about the potential hazards posed by uranium in SCF drinking water in the fall of 2013, Ms. McKay told Plaintiff "it is not a problem" and that he should aim to stay well-hydrated. [*Id.* At 15, ¶ 5]. According to the Amended Complaint, the medical providers referenced above have prescribed various medications and treatments, but

have failed to "diagnose [] the real problem"—apparently in Plaintiff's view, a medical condition or constellation of conditions related to his purported waterborne toxic exposures at the SCF. [*Id.* At 15-16, ¶¶ 6-9].

All Defendants argue that Mr. Cary has failed to plead facts that support a finding that Defendants Flauvel, McKay, and Dillinger knew that "he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *See Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999). [#35 at 16-18; #40 at 5-6]. Even assuming that each of these three Defendants had the requisite knowledge of Mr. Cary's conditions, Plaintiff's allegations do not state a cognizable claim that these individuals failed to take reasonable measures to address his medical needs. Mr. Cary concedes that he ultimately received the MRI [#11 at 16, ¶ 9(a)]; and that he is being treated with medication for the swelling in his ankles and legs [*id.* at 17 ¶ 9(e)]. Instead, the allegations suggest, at most, that Plaintiff has disagreed with the course of treatment recommended by his medical professionals at the SCF. [#11]. A difference of opinion regarding the course of treatment, without more, fails to establish a cognizable Eighth Amendment violation. *See Johnson v. Stephan*, 6 F.3d 691, 691 (10th Cir. 1992). Indeed, a misdiagnosis, even if rising to the level of medical malpractice, is insufficient under Tenth Circuit case law to satisfy the subjective component of a deliberate indifference claim. *Self v. Crum*, 439 F.3d 1227, 1234 (10th Cir. 2006).

Accordingly, I RECOMMEND that Claim II of Plaintiff's Amended Complaint, which is styled as "Irreparable Injury/8th Amendment," be DISMISSED WITHOUT PREJUDICE as to all Defendants.[7]

---

[7] The State Defendants argue that Plaintiff's claims are barred under the Prison Litigation Reform Act ("PLRA") because as "to claims one and two regarding the drinking water at SCF, Plaintiff does not adequately allege facts demonstrating that any physical symptoms were caused

### IV. Plaintiff's "Supplemental Pleading"

The court has also reviewed Plaintiff's "Supplemental Pleading" filed on March 4, 2015, the same day the State Defendants filed their Motion to Dismiss [#46]. Rule 15(a) of the Federal Rules of Civil Procedure allow a party to amend once as a matter of course after the filing of a motion pursuant to Rule 12(b). Fed. R. Civ. P. 15(a)(1)(B). All other proposed amendments may only be made with the opposing party's consent or the court's leave. Fed. R. Civ. P. 15(a)(2). As the State Defendants note, this court has already permitted Mr. Cary an opportunity to amend his original complaint, in order to cure the deficiencies.[8] [#52 at 4]. Therefore, Plaintiff was required under the Federal Rules of Civil Procedure to seek leave to further amend his Amended Complaint, and has not done so.

Therefore, I RECOMMEND that Plaintiff's "Supplemental Pleading" [#46] be STRICKEN for failing to comply with the Federal Rules of Civil Procedure or the Local Rules of Civil Practice of this District.

---

by his ambiguous exposure to the water." [#35 at 21]. The PLRA provides that "[n]o federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Plaintiff here has pled various physical maladies said to be connected to his exposure to toxicities allegedly present in the SCF's water supply. [#11 at 16-17]. The State Defendants admit that Plaintiff's medical records reflect some or all of these medical conditions. [#35 at 18]. Therefore, I do not recommend dismissal on the basis of the PLRA.

[8] Defendant McKay does not address "Plaintiff's Supplemental Pleading," as it was filed after her Motion to Dismiss. Even if the court accounted for the allegations as set forth in the "Supplemental Pleading," it would not change the court's substantive analysis.

**IV.     Punitive Damages**

Because the court has determined that Plaintiff should not be permitted to proceed with either remaining claim of his Amended Complaint, Plaintiff's claim for punitive damages must also fail. In any case, Mr. Cary has failed to plead sufficient facts – beyond conclusory statements and labels – to state a cognizable claim that each Defendant actually knew that he was violating Mr. Cary's constitutional rights or acted with callous indifference as to whether such rights were being violated.

**CONCLUSION**

For the reasons set forth herein, this court respectfully RECOMMENDS that:

(1)     The State Defendants' Motion to Dismiss Complaint [#35] be GRANTED;

(2)     The Motion to Dismiss from Defendant Keri McKay [#40] be GRANTED;

(3)     That Plaintiff's Amended Complaint [#11] be DISMISSED in its entirety, WITHOUT PREJUDICE.

(4)     That Plaintiff's Supplemental Pleading [#36] be STRICKEN.[9]

---

[9] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations  and will result in a waiver of the right to appeal from a judgment of the district court based on  the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d  573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52  F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's  order, cross-claimant had waived its right to

DATED: August 3, 2015                    BY THE COURT:

                                                    s/ Nina Y. Wang
                                                  Nina Y. Wang
                                                  United States Magistrate Judge

---

appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see*, *Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).